**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SHERI SPEER | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:20-CV-928 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CITY OF NORWICH, et al., | : | |
| Defendants | : | MAY 18, 2021 |
| | : | |
| | : | |

**RULING ON MOTION TO DISMISS (DOC. NO. 33) AND OTHER ISSUES**

## I.    INTRODUCTION

The plaintiff, Sheri Speer ("Speer"), acting pro se, filed a Complaint against the

City of Norwich ("Norwich"), Norwich Public Utilities ("NPU"), former NPU Director John

Bilda ("Bilda"), the law firm Brown Jacobson PC ("Brown Jacobson"), Attorney Donna

Skaats ("Skaats"), Steven Tavares ("Tavares"), and Aimee Wickless ("Wickless").  See

Compl. (Doc. No. 1).  The Complaint seeks to raise claims for violations of the Sherman

Act, pursuant to section 15 of title 15 of the U.S. Code; and of her right to equal

treatment under the law, in violation of the Fourteenth Amendment and section 1983 of

title 42 of the U.S. Code.  See id. ¶¶ 37-46.

For the reasons discussed below, the court grants NPU and Bilda's Motion to

Dismiss, terminates as moot the four Motions for a More Definite Statement, and denies

Speer's Motion for a Corporate Disclosure Statement and Motion for Leave to File.

Additionally, the court determines that Bilda is not a proper party and that Speer's

Complaint is clearly frivolous with respect to all defendants.  Therefore, the court

dismisses Speer's Complaint with prejudice as to all defendants.

II.     **BACKGROUND**

A.      Factual Allegations in the Complaint

Conclusory assertions pervade Speer's Complaint.  For the sake of clarity, the court lays out the Complaint's factual allegations separately from Speer's conclusory characterizations of those allegations.

Sheri Speer is a resident of Norwich, Connecticut and works as a real estate broker and property manager.  Compl. ¶ 1.  Steven Taveras also works in the real estate industry in Norwich.  Id. ¶ 5.  Taveras owns properties located in Norwich, and he is affiliated with several business entities, including Clipper Realty Trust and Seaport Capital Partners, LLC.  Id.

Attorneys Lloyd Langhammer and Donna Skaats have provided legal representation to Taveras and the business entities with which he is affiliated.  Id. Skaats and Langhammer also represent Norwich as its "corporation counsel", as do Brown Jacobson and Attorney Aimee Wickless.  Id. ¶ 4. Brown Jacobson and Langhammer also act as "corporation counsel" for NPU.  Id.

In 2011, Taveras retained Skaats as counsel after Speer filed a lawsuit against him claiming that he had unlawfully converted the rents of properties that Speer manages.  Id. ¶ 12.  Skaats and Taveras have facilitated the funding of real estate investments and business ventures.  Id. ¶ 6.  Since 2011, Taveras has acquired several properties previously owned by Speer, including 12 Rogers Avenue, 29 Division Street, 35-37 Second Street, 371 Laurel Hill Avenue, and 35 Elizabeth Street.  Id. ¶ 32.

On an unspecified date, Skaats subpoenaed Speer's financial and medical records from Speer's accountant.  Id. ¶ 15.  These records included medical records

that had been in the possession of NPU.  Id.  At some point, Langhammer ordered these records turned over to Attorney Patrick Boatman, who was representing entities affiliated with Taveras.  Id.  The records were never returned to Speer.  Id.

NPU is a public utility company owned and operated by Norwich.  Id.  NPU is the exclusive provider of utility services in Norwich.  Id.  On an unspecified date, Taveras and Langhammer brokered a deal between Taveras and NPU, to Taveras's benefit, which concerned utilities.  Id.  Similarly, Taveras and Skaats brokered a deal between Taveras and Norwich, through Attorney Aimee Wickless, concerning property taxes.  Id.

On an unspecified date, NPU charged Speer for water and utility services in connection with properties associated with Taveras.  Id. ¶ 19.

On an unspecified date, NPU shut off Speer's electricity and water services, even though Connecticut's Public Utility Regulatory Authority informed NPU and its counsel that Speer suffered from financial hardship and an unspecified medical condition.  Id. ¶ 20.

Over an unspecified time period, Langhammer and Skaats held meetings concerning Speer.  Id. ¶ 22.

On an unspecified date, Wickless placed a $100 "relocation lien"[1] on a property owned by Speer.  Id. ¶ 25.  The tenant who occupied that property had sublet the property's garage as a residential unit.  Id.  Speer did not learn of the tenant's conduct

---

[1] By "relocation lien", Speer appears to refer to a remedy created by Connecticut's Uniform Relocation Assistance Act, which addresses, inter alia, the "treatment of persons displaced by . . . building code enforcement activities."  See Conn. Gen. Sat. § 8-266.  Section 8-268 authorizes local governments in Connecticut to place liens on dwellings in order to secure payment by landlords for relocation expenses paid by local governments to tenants displaced by enforcement of code violations."  Id. § 8-268(a).

until after the lien was imposed.  Id.  Norwich also placed a relocation lien on another property, despite the fact that the tenant had taken possession of that property by falsely representing that he was a contractor hired to conduct work on the property.  Id.

On an unspecified date, Bilda ordered utility services to be disconnected at 101 Water Street, a property owned by Speer.  Id. ¶ 26.  This caused pipes to explode.  Id. Bilda no longer works as NPU's director, because he was indicted, on an unspecified date, for an unspecified federal offense relating to misuse of public resources.  Id. ¶ 3. Sometime in 2015, NPU attempted to shut off utility services for a different unit at 101 Water Street, even though the tenant for that unit had paid the water bill for the unit in full.  Id. ¶ 35.

On or around February 2019, Norwich "t[oo]k[ ] the position" that there was a code violation at Apartment 1 of 20 Central Avenue, a property owned by Speer.  Id.  A prospective tenant then declined to rent a unit from Speer.  Id.

B.    Conclusory Assertions

Speer asserts that the defendants' actions are part of a nefarious scheme to "Blacklist[ ]" her.  See Compl. ¶ 13.  According to Speer, "[t]he Defendants, with the exception of Taveras, operated a closed network cloaked under color of law and municipal authority."  Id. ¶ 11.  Through this "network", these defendants "decide which property owners and managers get preferential treatment" with respect to "tax payments, utility payments, utility connection and disconnection[,] and the decision of whether or not to commence or not commence municipal tax foreclosure."  Id.  Speer refers to these defendants, and individuals in their good graces, as "In Network", or as

4

"Whitelisted."  Id.  ¶¶ 12, 14.  Individuals, such as Speer, who are not in favor with these defendants, are "Out of Network", or "Blacklisted."  Id.

Speer attributes the machinations of the "Network" to various actions alleged to have been taken by the defendants to her disadvantage.  See id. ¶ 31.  For example, Speer asserts that it was her "Blacklisted" status that facilitated the receipt by Skaats, NPU, Taveras, and Langhammer of Speer's medical and financial records.  Id. ¶ 15.  It was also Speer's "Blacklisted" status that caused NPU to charge Speer for utility services for a property affiliated with Taveras, and that motivated NPU, at the behest of the "Attorney Defendants" to shut off Speer's electricity and water service, despite being told to refrain from doing so by the Connecticut Public Utility Regulatory Authority.  Id. ¶¶ 19-20.  Similarly, the "relocation liens" were imposed "out of malice and due to [Speer]'s status as being Blacklisted",  id. ¶ 24, and NPU and Bilda shut off water and other services at properties owned by Speer because of their desire "to favor those Whitelisted [ ] to the direct financial detriment of those who are Blacklisted," id. ¶ 26. Speer also speculates, "[o]n reasonable suspicion and belief", that "the disadvantages of being Blacklisted" include "instructions from the Attorney Defendants to public officials and even City Council members to not speak to [Blacklisted individuals] or attempt any resolution of issues."  Id. ¶ 29.

According to Speer, Taveras hired Skaats not merely for legal counsel, but also to become "In Network."  Id. ¶¶ 12-14, 31.  Speer asserts that Taveras's newfound "In Network" status enabled him to secure his deals with NPU concerning utilities and with Norwich regarding property taxes.  Id. ¶ 18.  Likewise, because Taveras was

"Whitelisted", he was shielded from foreclosure on multiple properties for which he owed balances.  Id. ¶ 21.

With respect to the meetings organized by Langhammer and Skaats, Speer asserts that this "Task Force" was an effort by the "Network" to "drive [Speer] out of business, and make sure that she received such disproportionately oppressive and burdensome treatment sufficient that she could never engage in her business and vocation as a realtor or property manager."  Id. ¶ 22.  Speer asserts that, as a result of these meetings, she was defamed.  Id. ¶ 23.

Additionally, Speer asserts that Clipper Realty Trust "never legally existed because it never registered with the Secretary of State as required by the Connecticut Uniform Statutory Trust Act."  Id. ¶ 7.  According to Speer, Clipper Realty Trust "is used as the veneer of a shell to operate ECT Holdings, LLC", another entity affiliated with Taveras."  Id.  Speer asserts that Taveras uses shell entities "to conceal the true beneficial and monopolistic operations of [ ] Tavares" and "conceal from State and Federal Courts the true corporate ownership of the same and defeat unsophisticated creditor/investors seeking to recover funds given to Tavares."  Id.

Further, with respect to the February 2019 code violation incident, Speer asserts, without describing the purported basis for or circumstances of the alleged violation, that "there was no code violation."  Id. ¶ 35.

Finally, Speer asserts, without explanation or elaboration, that she was only able to discover the facts necessary to file the Complaint as recently as 30 days prior to the date on which she filed the Complaint, because of unspecified efforts by the defendants to conceal such facts.  Id. ¶ 10.

C.      Procedural Background

Speer filed her Complaint on July 7, 2020.  See Compl.  Speer's Complaint seeks to raise claims for violations of the Sherman Act, pursuant to section 15 of title 15 of the U.S. Code; and of her right to equal treatment under the law, pursuant to the Fourteenth Amendment and section 1983 of title 42 of the U.S. Code.  See id. ¶¶ 37-46.

On October 5, 2020, Norwich moved, pursuant to Federal Rule of Civil Procedure 12(e), for a more definite statement of Speer's Complaint.  See Mot. for More Definite Statement ("Norwich's Mot. for Stmt") (Doc. No. 24).  In support of this Motion, Norwich argues that "[Speer]'s Complaint is so vague and ambiguous that the defendant cannot reasonably prepare a response."  See id. at 2.  Soon thereafter, Langhammer,[2] Skaats, Brown Jacobson, and Wickless filed their own Motions for a More Definite Statement, based on the same position.  See Mot. for More Definite Statement ("Langhammer's Mot. for Stmt") (Doc. No. 27); Mot. for More Definite Statement ("Skaats's Mot. for Stmt") (Doc. No. 28); Mot. for More Definite Statement ("Brown Jacobson & Wickless's Mot. for Stmt") (Doc. No. 30).  Speer opposes these Motions.  See Pl.'s Objs. (Docs. Nos. 26, 37, 48, 39).

On October 22, 2020, NPU and Bilda filed a Motion to Dismiss the Complaint, on several different grounds, and pursuant to multiple subsections of Federal Rule of Civil Procedure 12.  See Defs.' R. 12(b) Mot. to Dismiss ("NPU & Bilda's Mot. to Dismiss")

---

[2] Langhammer also moved for an Order requiring Speer to deposit $500 as security for costs, pursuant to Local Rule 83.3(a).  See Mot. for Security for Costs (Doc. No. 20).  On October 15, 2020, the court granted Langhammer's Motion and ordered Speer to deposit or file a bond with sufficient surety in the sum of $500 within 30 days.  See Order (Doc. No. 29).  There is no indication on the case docket that Speer ever complied with this Order.  However, the court declines to address this issue further, given its conclusion that the Complaint is clearly frivolous as to all defendants.

(Doc. No. 33); Defs.' Mem. of Law in Supp. of R. 12(b) Mot. to Dismiss ("NPU & Bilda's Mem.") (Doc. No. 34). Speer opposes this Motion. See Obj. to Mot. to Dismiss by Defs. Bild & NPU ("Pl.'s Opp'n") (Doc. No. 40). On November 11, 2020, NPU and Bilda filed a Reply in support of their Motion to Dismiss. See Defs.' Reply to Pl.'s Obj. to R. 12(b) Mot. to Dismiss ("NPU & Bilda's Reply") (Doc. No. 45). On January 6, 2021, the court issued an Order staying all discovery in this case, until the court rules on NPU & Bilda's Motion to Dismiss. See Order (Doc. No. 47).

On January 11, 2021, Speer filed Motion for an Order, pursuant to Federal Rule of Civil Procedure 7.1,[3] requiring Taveras, whom her Complaint names as "Steven Taveras a/k/a, d/b/a Seaport Capital Partners, LLC, a/k/a, d/b/a Clipper Realty Trust, a/k/a, d/b/a Timberlines, LLC, a/k/a, d/b/a ECT Holdings, LLC, a/k/a, d/b/a T&T Capital Partners, LLC", Compl. ¶ 5, to file a Corporate Disclosure Statement. See Mot. for Order Re Corp. Disclosure Statement (Doc. No. 48). After court granted this Motion, see Order (Doc. No. 49), Tavares filed a Corporate Disclosure Statement, which states that "Steven Taveras has no parent company", Corp. Disclosure Statement (Doc. No. 50).

On January 25, 2021, Speer filed a second Motion for an Order requiring Taveras to file a Corporate Disclosure Statement, this time stating that such an Order was necessary "because there has been much reference by the Defendants especially to a bankruptcy matter styled In Re Speer 14-21007, [and] the very existence of Clipper

---

[3] Federal Rule of Civil Procedure 7.1(a) provides that "[a] nongovernmental corporate party must file 2 copies of a disclosure statement that: (1) identifies any parent corporation and any publicly held corporation owning 10% or more of its stock; or (2) states that there is no such corporation." Fed. R. Civ. P. 7.1(a).

Realty Trust is at direct issue, and . . . renders the involuntary petition a fraud on its face." See Mot. for Order Regarding Corp. Disclosure Statement of Seaport Entities (Doc. No. 51).  Langhammer and Taveras filed Objections to this Motion, see Obj. to Mot. for Order Regarding Corp. Disclosure Statement of Seaport Entities (Doc. No. 52); Obj. to Mot. for Order Regarding Corp. Disclosure Statement of Seaport Entities (Doc. No. 53), and Speer moved for leave to response to these Objections, see Mot. for Leave (Doc. No. 55).

      D.    Other Proceedings

      This case is not the only matter that Speer is litigating, or has litigated, before this court, against several of the same defendants.[4]  See Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012) (noting that courts may "take judicial notice of relevant matters of public record").  The court briefly mentions these cases, in order to give necessary context to Speer's current case.

      Since 2014, Speer has been the subject of bankruptcy proceedings, which were initiated by an involuntary petition.  See In re Speer, Case No. 14-21007 (AMN) (Bankr. D. Conn.), Order Denying Mot. for Order Determining Adequate Assurance Pursuant to 11 U.S.C. § 366(a), ECF No. 668 (June 24, 2015), at 1.  Skaats represents Clipper Realty Trust and Seaport Capital Partners, which are petitioning creditors in that case. See In re Speer, Case No. 14-21007 (AMN) (Bankr. D. Conn.), Dkt. Sheet.  The Trustee's Final Report reflects that NPU is a creditor of Speer's and that Langhammer,

---

[4] Additionally, the court notes that Speer's Complaint in the current case references her bankruptcy proceedings, as well as allegations pertaining to utility services and a medical condition, which are the basis for her claims in Case No. 3:19-CV-2005 (JCH).  See Compl. ¶¶ 15, 20.

Skaats, Wickless, and Brown Jacobson all represents creditors in connection with Speer's bankruptcy proceedings.  See In re Speer, Case No. 14-21007 (AMN) (Bankr. D. Conn.), Trustee's Final Order, ECF No. 1864 (Sept. 1., 2020), at 14.

Speer has filed 40 appeals from orders issued by the Bankruptcy Court.  See Speer v. Norwich Pub. Utils. et al., Case No. 3:19-CV-2005 (JCH), Ruling, ECF No. 40 (Oct. 30, 2020), at 8 n.2 (listing first 39 appeals); In re Speer, Case No. 3:20-CV-1592 (JCH) (40th appeal).  In more than one of these appeals, from this same bankruptcy matter, Speer has argued that the Bankruptcy Court lacked jurisdiction under section 303(b) of the U.S. Code because there were not three proper petitioning creditors when Speer's bankruptcy case was initiated in 2014.  See In re Speer, No. 3:20-CV-1095 (JCH), Ruling, ECF No. 21 (Nov. 3, 2020), at 1.  In the course of denying Speer's 39th appeal from her bankruptcy proceeding, this court rejected this argument as "frivolous", because "the Second Circuit [has] expressly stated that . . . the chief authority on which Speer relies . . . 'can no longer be considered good law on this point.'"  Id. at 2 (quoting In re Zarnel, 619 F.3d 156, 169 (2d Cir. 2010)).  Speer's appeal to the Second Circuit, from this court's denial of her 39th appeal from the Bankruptcy Court to this District, was unsuccessful.  See In re Speer, No. 3:20-CV-1095 (JCH), Mandate of USCA, ECF No. 25 (Apr. 1, 2021).

Moreover, the Bankruptcy Court issued an Order finding that Speer exhibited "flagrant disregard for this court's orders" and "bad faith."  See In re Speer, Case No. 14-21007 (AMN) (Bankr. D. Conn.), Scheduling Order and Order to Show Cause Why Sheri Speer's Ability to File Pleadings in the Bankruptcy Court Should Not Be Limited, ECF No. 1536 (Nov. 22, 2017), at 6-7.  The Bankruptcy Court also limited Speer's ability

10

to file documents before the Bankruptcy Court, without first seeking leave of court.  See

In re Speer, Case No. 14-21007 (AMN) (Bankr. D. Conn.), Order Granting Motion for

Injunctive Order Pursuant to D. Conn. L. R. 16(g)(2), ECF No. 1708 (July 18, 2018), at

1.

      In 2019, Speer filed a Complaint before this Court, against NPU, Langhammer,

and Skaats, asserting violations of the Americans with Disabilities Act, the Equal

Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and sections

1983 and 1985 of title 42 of the U.S. Code, as well as intentional infliction of emotional

distress.  See Speer v. Norwich Pub. Utils. et al., Case No. 3:19-CV-2005 (JCH),

Ruling, ECF No. 40 (Oct. 30, 2020), at 1.  This court granted Skaats's Motion to Dismiss

in that case and ordered Speer to show cause why the court should not dismiss Speer's

Complaint in that case as frivolous as to all defendants.  Id. at 1-2.  Speer's interlocutory

appeal of that Ruling was unsuccessful.  See Speer v. Norwich Pub. Utils. et al., Case.

No. 3:19-CV-2005 (JCH), Mandate of USCA, ECF No. 54 (Apr. 9, 2021).  Recently,

after considering two Responses by Speer to the court's Order to Show Cause, the

court dismissed that entire case with prejudice and imposed a sanction roughly

equivalent to section 1915A of title 28 of the U.S. Code, that is, an initial review

requirement for any future complaints filed by Speer in the District of Connecticut.  See

Case. No. 3:19-CV-2005 (JCH), Ruling Dismissing Case and Imposing Sanction, ECF

No. 55 (May 18, 2021).

## III.   STANDARD OF REVIEW

      To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in the Complaint as true, and draws all reasonable inferences in the non-movant's favor.  La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

A court reviewing a pro se complaint must construe the complaint "liberally to raise the strongest arguments it suggests."  McCray v. Lee, 963 F.3d 110, 116 (2d Cir. 2020) (citations, alterations, and internal quotation marks omitted).  Nevertheless, even a pro se complaint will not survive dismissal unless its allegations meet the plausibility standard.  See, e.g., Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015).

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  A plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence.  Id.  When determining whether to dismiss for lack of subject matter jurisdiction, a court may consider affidavits.  All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 (2d Cir. 2006).  A court also "has discretion to hold a hearing to resolve factual disputes that bear on the court's jurisdiction."  Saleh v. Sulka Trading, 957 F.3d 348,

12

353 (2d Cir. 2020).  However, a court must otherwise "accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor."  <u>Id.</u>

## IV.    DISCUSSION

A.    <u>Bilda</u>

NPU and Bilda move for dismissal of Bilda from the case, on the ground that Bilda is not a proper party to this case under Federal Rule of Civil Procedure 25(d).  <u>See</u> NPU & Bilda's Mem. at 7-8.  Rule 25(d) states:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.  Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.  The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Fed. R. Civ. P. 25(d).

Speer's Complaint alleges that Bilda, in his capacity as Director of NPU, ordered utility services to be disconnected at 101 Water Street, a property owned by Speer. Compl. ¶ 26.  The Caption of Speer's Complaint indicates that Speer seeks relief against Bilda in his capacity as "Former Director of Norwich Public Utilities."  <u>See id.</u> at 1 (Case Caption).  Although Rule 25(d) directly addresses circumstances where "a public officer . . . ceases to hold office while the action is pending," Fed. R. Civ. P. 25(d), the court concludes that dismissal is also appropriate when a Complaint seeking relief against a former public officer in his official capacity is filed after that officer ceases to hold office, cf. <u>Founders Ins. Co. v. Cuz DHS, LLC</u>, No. 3:17-CV-1476 (JCH), 2017 WL 5892194 (D. Conn. Nov. 28, 2017, at *3 (recognizing that substitution under Rule 25(d) might apply where plaintiff filed suit against deceased defendant, instead of against the

decedent's estate).  Further, in her Opposition to the Motion to Dismiss, Speer "concedes that, should the Court deem it necessary, [Bilda's] successor, Christopher Larose, [should] be named substitute Defendant."  See Pl.'s Opp'n to Mot. to Dismiss at 5.  Therefore, the court dismisses Bilda from the case with prejudice, and his "successor is automatically substituted as a party."  See Fed. R. Civ. P. 25(d).

      B.    <u>Failure to State a Claim</u>

Speer's Complaint purports to raise claims under the Sherman Act and the Equal Protection Clause.  See Compl. ¶¶ 37-46.  The court concludes that both purported claims fail to state plausible claims and are also frivolous.[5]  As discussed in more detail below, Speer's pleading tactic of alleging a series of transgressions by the defendants against her and then affixing the labels of Sherman Act and equal protection claims, without factual support for such assertions, is an abuse of the pleading process.

---

[5] The court recognizes that NPU and Bilda's Motion to Dismiss seeks dismissal on multiple grounds, including lack of subject matter jurisdiction and lack of personal jurisdiction.  See NPU & Bilda's Mot.  Although courts "traditionally treat personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues."  ONY, Inc. v. Cornerstone Therapeutics, Inc., 720 F.3d 490, 498 n.6 (2d Cir. 2013) (citations omitted).  The court declines to address the issue of personal jurisdiction, at this time, because not all defendants have challenged personal jurisdiction, and because-- as explained below--the court concludes that Speer's Complaint is frivolous as to all defendants.

"Federal courts must determine that they have [subject matter] jurisdiction before proceeding to the merits."  Lance v. Coffman, 549 U.S. 437, 439 (2007) (citation omitted).  NPU and Bilda characterize two issues as pertaining to subject matter jurisdiction.  The court has already addressed the first issue: whether Bilda is a proper party.  The second issue--immunity under the Local Government Antitrust Act-- is an affirmative defense and does not go to subject matter jurisdiction.  See Expert Masonry, Inc. v. Boone Cty., Ky., 440 F.3d 336, 344-46 (6th Cir. 2006) ("As a general proposition, only after a court has satisfied itself that the plaintiff has stated a prima facie violation of the antitrust laws should it assess any affirmative defense, such as the absolute immunity from antitrust damages enjoyed by local governments and state action immunity." (citations omitted)).  The court makes clear, however, that it is not passing on the merits of any of the grounds for dismissal raised by NPU and Bilda that are not addressed in this Ruling.  The court exercises its discretion in this manner in order to conserve judicial resources in connection with what the court deems to be a frivolous and abusive lawsuit.

"Although the Sherman Act, by its terms, prohibits every agreement 'in restraint of trade,' the Supreme Court has long recognized that Congress intended to outlaw only unreasonable restraints." Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc., 467 F.3d 283, 289 (2d Cir. 2006) (brackets and citation omitted). Unreasonable restraints fall into two categories: conduct that is per se unreasonable, and conduct "outlawed only after evaluation under the so-called 'rule of reason.'" Id. (citation omitted). "The per se label is applied '[o]nce experience with a particular kind of restraint enable the Court to predict with confidence that the rule of reason will condemn it.'" Id. (quoting Arizona v. Maricopa Cty. Med. Soc'y, 457 U.S. 332, 344 (1982)).

The "rule of reason analysis" governs "[m]ost antitrust claims." Id. at 290 (citation omitted). This approach assesses "whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." Id. (citation omitted).

In addition, "private plaintiffs must demonstrate antitrust standing . . . [b]ecause Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." Id. (citations omitted). Courts consider the following non-exclusive "'efficient enforcer' factors" when assessing whether a private plaintiff has antitrust standing:

> (1) 'the directness of the asserted injury'; (2) 'the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement'; (3) the speculativeness of the alleged injury; and (4) the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries.

15

Id. at 290-91 (citation omitted).

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  A plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).  The similarity between the plaintiff and comparators must be such that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  Hu v. City of New York, 927 F.3d 81, 94 (2d Cir. 2019) (citation omitted).

Speer's Complaint does not come close to stating either claim.  Stripped of conclusory assertions, Speer's Complaint alleges that the defendants have all acted in ways detrimental to Speer, and that some of the defendants provide legal representation to some of the other defendants.  See Compl. ¶¶ 1-36.  Speer seeks to

string these allegations together by asserting, in conclusory fashion, that the defendants are engaged in a conspiracy against her, but Speer's vague, disjointed factual allegations cannot support this massive inferential leap.

With respect to her purported claim under the Sherman Act, Speer's Complaint does not allege sufficient facts from which a factfinder could assess "whether the questioned practice imposes an unreasonable restraint on competition, taking into account specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." See Paycom Billing Servs., Inc., 467 F.3d at 290. Further, the court has no trouble concluding that Speer lacks antitrust standing, because she would not be an "efficient enforcer." Id. at 290. The court notes that the factor pertaining to "the speculativeness of the alleged injury" applies with particular force in this case--Speer's assertions regarding the "Network" are wholly speculative. See id.; Compl. ¶¶ 11-15.

With respect to Speer's purported claim for unequal treatment under the law, her Complaint alleges absolutely no facts from which a court could reasonably infer "an extremely high degree of similarity between [Speer] and the persons to whom [Speer] compare[s] [herself]." See Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). Speer's only mentions of comparators come in the form of vague, conclusory assertions. See Compl. ¶¶ 11-15. Therefore, the court concludes that Speer's Complaint fails to state a claim for violations of the Sherman Act or for violations of her right to equal protection under the law. The court grants NPU and Bilda's Motion to Dismiss on this ground, and the court dismisses both NPU and Bilda's

successor from this case.  As explained below, the court's dismissal of NPU and Bilda's successor is with prejudice.

### C.    Dismissal of Other Defendants

The Second Circuit has recognized that "district courts may dismiss a frivolous complaint sua sponte even when the plaintiff has paid the required filing fee."  See Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 364 (2d Cir. 2000) (per curiam).  In assessing whether a case is frivolous, a court may consider other actions filed by the same plaintiff pertaining to similar matters.  See id. at 363.  Although, "[a]s a general matter . . . it is improper for a district court to dismiss a complaint with prejudice for failure to state a claim without giving the plaintiff notice and an opportunity to be heard and to offer an amended pleading," a court may dismiss a complaint with prejudice in a "clearly frivolous case[ ]."  Hughes v. Anderson, 449 F. App'x 49, 51 (2d Cir. 2011) (summary order) (citing Perez v. Ortiz, 849 F.2d 793, 797 (2d Cir. 1988)).

Speer's Complaint is clearly frivolous.  It lists a series of alleged transgressions by the defendants, many of them undated, and seeks to string them together by alleging that the defendants are part of a secretive conspiracy Speer calls the "Network."  See Compl ¶¶ 11-46.  Many, if not most, of the paragraphs of the Complaint consist solely of vague, conclusory assertions.  See, e.g. id. ¶ 17 ("Those who are Whitelisted are never denied building or other permits based on back due taxes or utility liens, whereas those Blacklisted are.").  The paragraphs that do contain factual allegations are either vague, see, e.g., id. ¶ 36 (accusing Taveras and Skaats of "numerous attempts to exercise [Skaats's] municipal authority to have the Plaintiff prosecuted for one or more criminal acts relating to theft, elder abuse and housing violations"), or accompanied by

18

unsupported conclusory characterizations,  see, e.g., id. ¶ 24 (stating that Wickless placed a relocation lien on a property owned by Speer "out of malice and due to [Speer]'s status as being Blacklisted").

The court also notes that Paragraph 10 of Speer's Complaint is a bald, unsupported attempt to preempt a statute-of-limitations defense.  See id. ¶ 10 ("The Defendants have acted in an ongoing effort to conceal the necessary facts to bring and assert the causes of action herein, which have only been materially unearthed and discovered sufficient to fully know of this matter and bring this action in the past thirty days.").  Further, the court observes that Speer's second Motion for a Corporate Disclosure Statement is an attempt to re-litigate her argument, rejected as frivolous in connection with her bankruptcy proceedings, that the Bankruptcy Court lacked subject matter jurisdiction on the ground that there were not enough petitioning creditors.  See Mot. for Order Regarding Corp. Disclosure Statement of Seaport Entities (Doc. No. 51), at 1-2 ("[B]ecause there has been much reference by the Defendants especially to a bankruptcy matter styled In Re Speer 14-21007, [and] the very existence of Clipper Realty Trust is at direct issue, and . . . renders the involuntary petition a fraud on its face."); In re Speer, No. 3:20-CV-1095 (JCH), Ruling, ECF No. 21 (Nov. 3, 2020), at 2. The court denies this Motion, as well as Speer's Motion for Leave, by which she seeks to file a response to the defendants' Objections to her Motion for a Corporate Disclosure Statement (Doc. No. 55).

The court is also mindful of Speer's 40 appeals from her bankruptcy proceedings, including a recent appeal characterized as frivolous by this court.  See In re Speer, No. 3:20-CV-1095 (JCH), Ruling, ECF No. 21 (Nov. 3, 2020), at 2.  Further, as explained

above, the events and parties in this case overlap with Speer's bankruptcy proceedings and appeals, as well as another recent case in which this court imposed a sanction requiring initial review of new complaints filed by Speer.

Therefore, because Speer's Complaint is clearly frivolous, the court dismisses the Complaint as to all defendants with prejudice.  The court acknowledges that dismissal of a pro se plaintiff's initial complaint without leave to replead is only appropriate in rare circumstances.  See Hughes, 449 F. App'x at 51 (citing Perez, 849 F.2d at 797).  However, this is the rare case where such extreme action is appropriate.  Speer's asserted claims in this case are even more frivolous than those she pursued in the case that prompted the court to restrict Speer's ability to file new cases in the District of Connecticut.  See Case. No. 3:19-CV-2005 (JCH), Ruling Dismissing Case and Imposing Sanction, ECF No. 55 (May 18, 2021).  Granting Speer leave to replead in this case would be unduly prejudicial to the defendants, who have already had to waste considerable time responding to related, frivolous claims in other cases.  See Foman v. Davis, 371 U.S. 178, 182 (1962) (recognizing that "undue prejudice to the opposing party" may justify a court's refusal to grant leave to amend).

## V.    CONCLUSION

For the reasons stated above, the court grants NPU and Bilda's Motion to Dismiss (Doc. No. 33), terminates as moot the four Motions for a More Definite Statement (Docs. Nos. 24, 27, 28, 30), and denies Speer's Motion for a Corporate Disclosure Statement (Doc. No. 51) and Motion for Leave to File (Doc. No. 55).  The dismisses Bilda from the case, and his successor is automatically substituted.  However, because the court determines that Speer's Complaint is clearly frivolous with

respect to all defendants, the court dismisses Speer's Complaint with prejudice as to all defendants, including Bilda's successor.  The Clerk is directed to close the case.

**SO ORDERED.**

Dated this 18th day of May 2021, at New Haven, Connecticut.

 /s Janet C. Hall
Janet C. Hall
U.S. District Judge